**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MCALLISTER TOWING OF BALTIMORE, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 25-3581-BAH |
| SAFESEA TRANSPORT, INC., | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On October 31, 2025, Plaintiff McAllister Towing of Baltimore, Inc. ("Plaintiff" or "McAllister Towing"), brought suit against Defendant Safesea Transport, Inc. ("Safesea Transport"), alleging a breach of maritime contract (Count I) and, pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, requesting the issue of process of maritime attachment and garnishment including against the Garnishee M&T Bank (Count II). *See* ECF 1. Pending before the Court are Plaintiff's ex parte motion for an order authorizing issuance of process of maritime attachment and garnishment, ECF 3, and Plaintiff's ex parte motion for appointment for service of process of maritime attachment and garnishment, ECF 4.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, McAllister Towing is **INSTRUCTED** to provide additional briefing in support of its motions.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND

McAllister Towing brings this action under the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). ECF 1, at 1 ¶ 1. McAllister Towing represents that Safesea Transport "cannot be found in this District within the meaning of Supplemental Rule B." *Id.* at 2 ¶ 4. However, the garnishee, M&T Bank, "is located, can be found, and can be served with process in this District." *Id.* at 1 ¶ 2.

McAllister Towing, a Maryland corporation, provided tug services in the port of Baltimore to the "M/Y YASH," owned by Safesea Transport. *Id.* at 2 ¶ 8. McAllister Towing allegedly issued an invoice to Safesea Transport "on May 30, 2024 in the amount of $73,872.20 for services performed within this District." *Id.* at ¶ 9. McAllister Towing alleges that Safesea Transport "failed to pay the invoice when due." *Id.* at ¶ 10. In the event of nonpayment by the due date, McAllister Towing further alleges that their terms of payment provide, among other things, that they "shall be entitled to recover all costs of collection including reasonable attorney's fees and court costs, and 1.5 % interest per month on all outstanding balances." *Id.* at ¶ 11.

At that rate of interest, McAllister Towing alleges that "[f]or the period June 30, 2024 to April 17, 2025, interest in the amount of $10,601.17 (*i.e.* 291 days) accrued on the outstanding principal." *Id.* at 3 ¶ 12. "On April 17, 2025," McAllister Towing apparently "received a payment of $100, made on behalf of or for the benefit of Safesea." *Id.* at ¶ 13. That payment reduced "the interest owed to $10,501.17," but "did not impact the principal balanced owed." *Id.* From "April 17, 2025 to April 21, 2025 (i.e. 4 days), interest in the amount of $145.72 accrued on the outstanding principal," at which point Safesea Transport made another payment on April 21, 2025, in the amount of $49,900. *Id.* at ¶ 14. That payment "satisfied the accrued interest as of that date in the amount of $10,646.89 and reduced the outstanding principal amount owed to $34,691.09." *Id.* at ¶ 16.

2

Since then, however, McAllister Towing alleges that it "remains unpaid" and that Safesea Transport "is in default of payment." *Id.* at ¶ 19. McAllister Towing also reports that it "has accrued estimated attorneys' fees and costs of at least $10,000 for its collection efforts" so far. *Id.* ¶ 18. According to the complaint, Safesea Transport owes McAllister Towing $48,010.03 in total, reflecting a "$34,691.09 principal, $3,318.94 interest, [and] $10,000 [in] attorneys' fees and costs." *Id.* That amount of interest purportedly reflects that interest that has accrued on the outstanding principal "owed from April 22, 2025 to present." *Id.* at ¶ 17.

## II.    **LEGAL STANDARD**

"Rules B and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern the attachment and garnishment of assets in maritime or admiralty actions[.]" *Harbor Pilots of NY NJ, LLC v. Bouchard Transportation Co., Inc.*, 474 F. Supp. 3d 727, 729 (D. Md. 2020). Federal Rule of Civil Procedure Supplemental Rule B provides:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a). "Rule E further provides that maritime attachment and garnishment 'may be served only within the district.'" *Id.* (quoting Fed. R. Civ. P. Supp. R. E(3)(a)). "Collectively, then, Rules B and E require admiralty plaintiffs in this Court to satisfy four criteria to obtain an order of attachment:" (1) the plaintiff has a facially valid admiralty claim against the defendant; (2) the defendant cannot be found within the District of Maryland; (3) the defendant's property may be found within the District of Maryland; and (4) there is no other statutory or maritime law bar to the attachment. *Harbor Pilots*, 474 F. Supp. 3d at 729–30 (first citing *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 493 (2d Cir. 2013); and

3

then citing *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. 2013)); *see also Evridiki Navigation, Inc. v. Sanko S.S. Co.*, 880 F. Supp. 2d 666, 672 (D. Md. 2012).

"If the Court orders attachment, then 'any person claiming an interest in [the property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated.'" *Harbor Pilots*, 474 F. Supp. 3d at 730 (quoting Fed. R. Civ. P. Supp. R. E(4)(f)). "These procedures allow a maritime plaintiff to assert a claim against a defendant 'over whom the court does not (otherwise) have personal jurisdiction, by seizing property of the defendant (alleged to be in the hands of a third party).'" *Id.* (quoting *DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co. Tankschiff KG v. Essar Capital Ams., Inc.*, 882 F.3d 44, 47 (2d Cir. 2018)). The plaintiff seeking the initial ex parte order of attachment or garnishment bears the burden of establish the right to attachment. *See id.* (collecting cases). "Ultimately, the decision to grant or deny a motion for order of attachment rests in the trial court's discretion." *Id.* (quoting *DS-Rendite*, 882 F.3d at 48, 51).

## III.   ANALYSIS

"Supplemental Rule B(1)(b) provides that upon a request for attachment or garnishment, the Court must review the Verified Complaint and accompanying affidavit 'and, if the conditions of this Rule B appear to exist,' it must enter an order authorizing the attachment and garnishment." *Harbor Pilots*, 474 F. Supp. 3d at 730 (quoting Fed. R. Civ. P. Supp. R. B(1)(b)). "Rule B does not, however, explicitly provide what level of specificity the Verified Complaint and accompanying affidavit's allegations must meet." *Id.* "Generally, Rule B's pleading requirements 'are said to be easily met.'" *Id.* (quoting *DS-Rendite*, 882 F.3d at 49). In addition to ensuring that attachment and garnishment has not been served "before the garnishee comes into possession of the property" and that "the garnishee is not indebted to the defendant at the time garnishment is ordered," "district courts have required a minimal specificity of factual allegations identifying the

defendant's property to be attached before issuing Rule B attachments and holding Rule E hearings." *DS-Rendite*, 882 F.3d at 49 (citations omitted). "In other words, plaintiffs seeking attachment must satisfy the *Twombly-Iqbal* standard in identifying the property to be attached under Rule B—they must allege facts sufficient to 'state a claim to relief that is plausible on its face.'" *Harbor Pilots*, 474 F. Supp. 3d at 731 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, to demonstrate entitlement to attachment of a garnishee's assets a plaintiff must plausibly allege that the garnishee possesses identifiable property of the defendant. *Id.* "To make this showing, the plaintiff must provide sufficient factual allegations 'either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment.'" *Id.* (quoting *DS-Rendite*, 882 F.3d at 50).

Where allegations related to the relationship between garnishee and defendant are merely conclusory, courts have denied a plaintiff's motion for order of attachment and garnishment. *See id.* (collecting cases); *see also DS-Rendite*, 882 F.3d at 50–51 (affirming a trial court's denial of the plaintiff's motion for order of attachment because the plaintiff's complaint merely alleged that "[e]ach of the Garnishees, on information and belief, holds property of [the defendants]," and that the funds the garnishees held were "due and owing to Defendants"). McAllister Towing alleges that "[a] UCC-1 on file with the State of New Jersey, Department of Treasury - filing number 57138831 - lists M&T Bank as an active secured party to Defendant Safesea." ECF 1, at 3 ¶ 20. Accordingly, McAllister Towing asserts that "[a] reasonable inference is that SafeSea maintains accounts with M&T Bank which are accessible – and capable of being withdrawn – in this District." *Id.* at 3–4 ¶ 20.

As discussed, "[f]or Rule B attachment to be effective, the defendant must have property in the district that can be attached." *Woodlands, Ltd. v. Westwood Ins. Co., LTD.*, 965 F. Supp.

5

13, 14 (D. Md. 1997). "Thus, when the property sought to be attached is a bank account, 'the bank account must be situated within the [district] to be subject to the jurisdiction of the district court.'" *Id.* (quoting *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52 (2d Cir.1965)). McAllister Towing has alleged a specific banking institution at which such an account may be found. *See* ECF 1, at 4 ¶ 28. To be sure, this is more than "a speculative hope that Defendant's assets . . . will fortuitously appear in one of the myriad banks Plaintiff has identified in the District." *Wight Shipping, Ltd. v. Societe Anonyme Marocaine de L'Industrie Du Raffinage S.A.*, No. 08 Civ. 10169 (RJS), 2008 U.S. Dist. LEXIS 106420, at *5-8 (S.D.N.Y. Nov. 24, 2008).

However, in *Woodlands, Ltd. v. Westwood Ins. Co., LTD*, this Court considered whether plaintiffs' contention that a defendant's "bank account opened and maintained [at a NationsBank] in Charlottesville, Virginia may be attached, and thus is situated, at any of NationsBank's branch offices including those found here in Maryland." 965 F. Supp. at 14. There, the defendant argued that "each branch of NationsBank is a separate entity and service upon a Maryland branch is insufficient to reach the funds at their location in a separate district, Virginia." *Id.* Ultimately, the Court granted [the defendant's] motion to quash the court's order authorizing garnishment and attachment because "it appears that Maryland treats its bank branches as separate entities and would not find service on a branch bank in Maryland sufficient to attach an account maintained in Virginia."[2] *Id.* at 15.

McAllister Towing has not alleged where Safesea Transport maintains its account(s) or which such account(s) are located in this District. Instead, it merely alleges that, like the plaintiff

---

[2] The Court observed that the Southern District of New York's decision in *Digitrex, Inc. v. Johnson*, 491 F. Supp. 66, 69 (S.D.N.Y. 1980), was "not to the contrary" because it "held that service upon the main office of a bank was *sufficient* to attach a bank account opened and maintained at a branch within the same district." *Woodlands*, 965 F. Supp. at 14.

did in *Woodlands, Ltd.*, the garnishee, here M&T Bank, "maintains multiple branches and ATMs in this District." ECF 1, at 2 ¶ 7. As Judge Blake observed in *Woodlands, Ltd.*, given that "it appears that Maryland treats its bank branches as separate entities and would not find service on a branch bank in Maryland sufficient to attach an account maintained in Virginia," 965 F. Supp at 15, the same logic may apply here where Safesea Transport presumably maintains any M&T account in New Jersey, where its principal place of business is located, ECF 1, at 2 ¶ 6. Accordingly, McAllister Towing will be instructed to address the applicability of *Woodlands, Ltd. v. Westwood Ins. Co., LTD.*, 965 F. Supp. 13 (D. Md. 1997), and explain why the allegation that Safesea Transport "maintains accounts with M&T Bank which are accessible – and capable of being withdrawn – in this District," ECF 1, at 3-4 ¶ 20, is sufficient to justify the attachment of funds in the alleged M&T account.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court defers ruling on the ex parte motions for maritime attachment and garnishment, ECFs 3 and 4, until McAllister Towing provides additional briefing.

A separate implementing order will issue.


Dated: <u>November 3, 2025</u>                                   <u>          /s/          </u>
                                                          Brendan A. Hurson
                                                          United States District Judge